# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:14CR00028 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **RICHARD JERRY HICKS,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Kevin L. Jayne, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Michael A. Bragg, Bragg Law, Abingdon, Virginia, for Defendant.*

In this criminal case, defendant Richard Jerry Hicks, charged in this court with manufacturing methamphetamine and related offenses, has moved prior to trial to exclude evidence related to his 2010 state conviction for similar conduct, which evidence the government intends to introduce under Federal Rule of Evidence 404(b).[1]

Hicks has filed two separate motions in regard to this issue. In a Motion to Suppress, Hicks contends that certain incriminating statements he made to police

---

[1] Hicks further asserts that the government intends to introduce evidence of the defendant's older drug convictions. Since the government has solely focused on Hicks' 2010 conviction in its present briefing and argument, my decision relates to that conviction alone. If the government wishes to introduce at trial any 404(b) evidence related to other drug convictions, it must first obtain the court's permission after notice to opposing counsel.

in 2009 about his manufacture of methamphetamine, which statements supported his 2010 state conviction for that offense, must be suppressed because he was not advised of his *Miranda* rights,[2] and because he was not competent to waive those rights. In a separate Motion in Limine, Hicks seeks to exclude those statements, and his subsequent conviction for methamphetamine manufacture, on the ground that such evidence is inadmissible under Rule 404(b).

An evidentiary hearing has been held on the motions, and they are ripe for decision. For the reasons that follow, I conclude that the defendant's motions must be denied.

I.

On December 8, 2014, Hicks was indicted by the grand jury of this court for conspiracy to manufacture methamphetamine, 21 U.S.C. § 841(a)(1) (Count One), possession of pseudoephedrine with intent to manufacture methamphetamine, 21 U.S.C. §§ 841(c)(1)-(2) (Count Two), creating a substantial risk of harm to human life while manufacturing methamphetamine, 21 U.S.C. § 858 (Count Three), manufacturing methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Four), manufacturing methamphetamine on premises where a child resided, 21 U.S.C.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

§ 860a (Count Five), and maintaining a place for the purpose of manufacturing and distributing a controlled substance, 21 U.S.C. § 856(a)(1) (Count Six).[3]

At the hearing conducted on the defendant's motions, the court heard testimony from one witness — Detective Kevin Widener of the Washington County Sheriff's Office, a member of the Drug Enforcement Administration's Local Task Force. In addition, I have reviewed the exhibits introduced at the hearing as well as other documents filed in the present record. Based on this evidence, which is essentially uncontested, I find the following facts.

Detective Widener has 18 years of experience as a police officer and 12 years as a drug offense investigator. Methamphetamine is the principal type of illicit drug he investigates and he has investigated hundreds of such cases. He has been certified by the DEA's clandestine laboratory school since 2005.

On September 10, 2009, Detective Widener and other officers executed a search warrant at a mobile home located in Abingdon, Virginia, where Hicks was living with Jessica Marie Damron. The probable cause for the search was based on a confidential informant's controlled buy of methamphetamine from Hicks, which had taken place at the residence. (Search Warrant Aff., ECF No. 81-1.)

When the officers arrived at the residence to execute the search warrant at about 10:30 p.m., Hicks and others were present. As a result of the search, officers

---

[3] Codefendant Amanda Tignor was also charged in the Indictment, but has since pleaded guilty and was sentenced to 78 months imprisonment on June 1, 2015.

found various items used in the so-called "red phosphorous" methamphetamine manufacturing process, including pseudoephedrine, hydrochloric acid, fuel, and other items. (Evid. Log, ECF No. 81-1.) Detective Widener did not actually participate in the search, but instead waited outside with Hicks while the home was being searched and the lab dismantled. Detective Widener testified that, although he did not question Hicks, Hicks became upset, saying that he was going to spend the rest of his life in prison and that he wanted to die — specifically, that he wanted Detective Widener to "put a bullet in him." Detective Widener testified that he often hears these types of statements from suspects who are being arrested.

Once the search had concluded, Hicks was arrested and transported to the local regional jail. Detective Widener informed the jail staff of Hicks' statements about wanting to die. Hicks was placed in a cell known at the jail as the "suicide cell." Apart from detaining suicidal inmates, the cell is routinely used for suspect interviews at the jail because it provides a private place to talk and is readily accessible. Other than a window allowing direct viewing from the outside, the cell in question is little different than any other cell in the jail, being approximately 8 or 10 feet square and containing a bed.

At approximately 2:30 a.m., Detective Widener questioned Hicks in the cell about the events leading to his arrest. No other officers were present during the interview. Detective Widener informed Hicks of his *Miranda* rights prior to

interviewing him, but he did not obtain a written waiver of those rights. Detective Widener testified that he usually does not obtain a written waiver because his interviews are always recorded. He stated that it is his regular practice to carry a card containing a statement of *Miranda* rights, and to read the card along with the defendant at the time of arrest. Although Detective Widener's interview with Hicks was recorded, the electronic audio file of the interview was destroyed after Hicks' appeal period had expired, pursuant to the department's routine practice. Detective Widener prepared a written summary of the interview within a couple of days after the fact, a copy of which was introduced into evidence. (Interview Rep., ECF No. 81-2.)

According to Detective Widener, Hicks voluntarily waived his *Miranda* rights before being interviewed, and was not subjected to any sort of intimidation or pressure. Further, Hicks did not appear to be under the influence of drugs or alcohol during the interview. During the interview, Hicks took credit for the methamphetamine laboratory found during the police search. He stated that he had been cooking methamphetamine for about nine years and that "some say he is the best around." (Interview Rep., ECF 81-2.) Further, Hicks claimed that he cooked methamphetamine solely to support his own addiction. Detective Widener concluded the interview after only six minutes, when Hicks said that he wanted to go to bed.

I credit Detective Widener's testimony as to Hicks' *Miranda* waiver. I find that Hicks was read his *Miranda* rights upon his arrest and that he chose to voluntarily waive those rights before making incriminating statements. Further, although the interview recording was subsequently destroyed, I find the explanation for the destruction reasonable under the circumstances and thus decline to draw any negative inference against the government as a result of such destruction.

On May 7, 2010, Hicks pleaded guilty in the Washington County, Virginia, Circuit Court to manufacturing methamphetamine. He was sentenced to ten years imprisonment, with eight years suspended. (Judgment, ECF No. 81-3.)

On May 27, 2014, at around 11:00 p.m., Detective Widener participated in another search involving Hicks at a residence in Abingdon. (Evid. Log, ECF No. 81-4.) This second residence was a small house located only a few miles from the residence searched in 2009. At the time of the search, Hicks and Amanda Tignor, his codefendant in this case, were living at the residence, as were Tignor's young children. The search yielded materials typically used in the red phosphorous methamphetamine manufacturing process, including bi-layered liquids, pseudoephedrine, iodine, a pill crusher, and other materials. As confirmed by Detective Widener, these items indicated the same type of red phosphorous methamphetamine manufacturing process as was found during the 2009 search.

-6-

Case 1:14-cr-00028-JPJ-PMS   Document 88   Filed 07/22/15   Page 6 of 20   Pageid#: 277

Like the 2009 search, Detective Widener did not participate in the search, but stayed outside and interviewed Tignor and Hicks, who were present at the time of the search. Both denied any involvement with, or knowledge of, the methamphetamine lab. They were arrested, detained, and informed of their *Miranda* rights, but continued to deny that they had been involved with manufacturing methamphetamine.

Counsel for the government has represented that the government's anticipated evidence against Hick at trial will be Tignor's expected cooperating testimony, as well as Hick's presence at the crime scene.

On March 24, 2015, on the motion of his counsel, Hicks underwent an evaluation at the Metropolitan Correctional Center of the Bureau of Prisons in order to determine his competency to stand trial on the current charges. After a series of evaluations over the course of several weeks, a report dated April 21, 2015, found Hicks competent to stand trial. (Competency Eval. 17, ECF No. 60.) The evaluators diagnosed Hicks with Generalized Anxiety Disorder, Stimulant Use Disorder, and possible, though unconfirmed, Mild Vascular Neurocognitive Disorder. The evaluators concluded that Hicks' results on numerous tests were suggestive of malingering. The evaluators concluded that, given the results of these tests, "it is most likely the defendant has not been motivated to present himself genuinely during the evaluation." (*Id*. at 10.) The evaluators concluded

that, although Hicks lacked some knowledge of basic terminology, "it was evident he was aware of the underlying concepts and expectations of a defendant in court," and was "easily educated" about terms and procedures he was unfamiliar with. (*Id.* at 13.) Further, the evaluators found that Hicks had the ability to effectively communicate with counsel and to make decisions about his own defense. (*Id.* at 15.) Finally, the evaluators found that Hicks did not appear to have any mental health conditions that would interfere with appropriate courtroom behavior, and that he was capable of testifying in his own defense and speaking during sentencing proceedings if necessary. Based on these findings, the evaluators concluded that Hicks was competent to stand trial on the present charges. (*Id.* at 17.)

## II.

Hicks moves to suppress the statements he made to Detective Widener in 2009 on the grounds that he was not advised of his *Miranda* rights prior to making the statements and that in any event he was not competent to waive such rights. Specifically, Hicks seeks to exclude his statements admitting that he had manufactured methamphetamine in the laboratory found by law enforcement, and

that he had manufactured methamphetamine for years and was one of the best methamphetamine makers around.[4]

Hicks contends that these statements must be suppressed because there was no written waiver or other documentary proof that Hicks was advised of his *Miranda* rights. However, "a written waiver is not required under *Miranda*." *United States v. Montieth*, 662 F.3d 660, 669 (4th Cir. 2011) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). Rather, "[t]he lack of a written waiver goes to the weight of the officers' testimony." *Montieth*, 662 F.3d at 669. As stated above, I find credible Detective Widener's testimony that he informed Hicks of his *Miranda* rights prior to interview, and that he typically does not obtain written waivers because his interviews are recorded. Detective Widener's testimony is supported by the Interview Report he filled out soon after the

---

[4] As an initial matter, it appears that Hicks' motion solely relates to the statements he allegedly made in the cell after he had been arrested, and not his earlier statements made during the search of his residence. In any event, Hicks' earlier statements are not subject to suppression on *Miranda* grounds because they were not elicited through any questioning by Detective Widener but rather made spontaneously, and were thus not the product of police interrogation. *See United States v. Kimbrough*, 477 F.3d 144, 147 (4th Cir. 2007) (explaining that *Miranda* warnings are only required if suspect is "subjected to 'official' interrogation," meaning "questioning initiated *by law enforcement officers*").

Further, it also appears that, under the totality of the circumstances, Hicks was not yet in custody at the time his residence was being searched. Hicks was not handcuffed or otherwise formally arrested, he was not being actively questioned, and the only law enforcement officer present with him was Detective Widener, who was at the scene to assist in executing the search warrant. *See United States v. Jamison*, 509 F.3d 623, 631 (4th Cir. 2007) (explaining that "*Miranda* and its progeny do not equate police investigation of criminal acts with police coercion," and *Miranda* warnings are not required absent custodial interrogation).

interview, which states that Hicks was administered *Miranda* warnings prior to making incriminating statements. Further, as earlier explained, the subsequent destruction of the audio file of the interview does not detract from the credibility of Detective Widener's testimony that Hicks was administered his *Miranda* warnings prior to being interviewed.

In addition, Hicks claims that the statements should be suppressed because he was emotionally distressed at the time of the interview, as evidenced by his placement in the suicide cell, and he was thus not competent to waive his *Miranda* rights. In this regard, I credit Detective Widener's testimony that the so-called "suicide" cell was used for other purposes besides monitoring suicidal suspects, including arrestee intakes and interviews. Therefore, Hicks' placement in the suicide cell did not necessarily indicate that he was suicidal, or that Detective Widener perceived him to be suicidal.

Moreover, although it is true that Hicks made statements that he wanted to die at the time of his arrest, these statements must be viewed in their proper context. First, Hicks was being arrested and potentially subjected to significant prison time, and was therefore likely to have been upset at the time he made these statements. As Detective Widener noted in his testimony, it is not surprising to expect that criminal suspects might express some desperate thoughts when they are arrested.

-10-

Case 1:14-cr-00028-JPJ-PMS   Document 88   Filed 07/22/15   Page 10 of 20   Pageid#: 281

"There is a strong presumption against waiver of constitutional rights, but this presumption can be overcome." *United States v. Young*, 529 F.2d 193, 195 (4th Cir. 1975). The court must determine whether a suspect's waiver was knowing and voluntarily by examining "the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Walker*, No. 13-4739, 2015 WL 1926273, at *7 (4th Cir. Apr. 29, 2015) (internal quotation marks and citations omitted). A defendant's waiver "is deemed involuntary only if induced by such duress or coercion that the suspect's will has been overborne and his capacity for self-determination critically impaired." *United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir.1987). (internal quotation marks and citation omitted).

Even if I were to find that Hicks' purported mental distress was genuine, I would still find that his *Miranda* waiver was knowing and voluntary. As to the voluntariness element, the Supreme Court has held that the confession of even a seriously mentally ill defendant was voluntary absent evidence of "the crucial element of police overreaching." *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). The same inquiry applies "when analyzing the voluntariness of a *Miranda* waiver as when analyzing the voluntariness of statements under the Due Process Clause." *Cristobal v. United States*, 293 F.3d 134, 140 (4th Cir. 2002). Thus, "coercive police activity is also a necessary predicate to a finding that a waiver of *Miranda*

rights is not voluntary." *Id.* at 141 (citing *Connelly,* 479 U.S. at 169-70). "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Cristobal*, 293 F.3d at 141 (quoting Connelly, 479 U.S. at 165). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Connelly*, 479 U.S. at 164.

Hicks has not alleged, much less shown, that he was coerced by law enforcement officers in any way. The evidence shows that Hicks spoke willingly to Detective Widener, and there is no indication that "pressure, rough language, tricks, threats, inducements, or the like, [were] used at all." *Vance v. Bordenkircher*, 692 F.2d 978, 981 (4th Cir. 1982). Further, Detective Widener promptly ended the interview upon Hicks' request. Thus, Hicks' mental state is not dispositive, and absent any evidence of coercive police conduct I must find his waiver of constitutional rights was voluntary.

It is nonetheless possible, however, that "a waiver may very well have been voluntary (that is, uncoerced) and yet given without a knowing and intelligent waiver of *Miranda* rights." *Cristobal*, 293 F.3d at 142 (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). It is not enough to determine whether the waiver was voluntary; the court must also determine whether the waiver was knowing and

intelligent, considering the totality of the circumstances. *Cristobal*, 293 F.3d at 142. Despite any mental distress Hicks might have experienced, however, there is no evidence to suggest that he did not have "full awareness and comprehension of his Miranda rights." *Id.* at 142 n.10. The interview occurred some hours after Hicks' statements about wanting to die, and Detective Widener's interview notes and testimony indicate that Hicks was not under the influence of alcohol or drugs at the time of his arrest and that he spoke lucidly and logically during the interview. Further, Hicks knew he had the right to terminate the interview, and did so shortly after it began.

Based on these findings, I conclude that Hicks was properly informed of his *Miranda* rights, and knowingly and voluntarily waived those rights when speaking to Detective Widener. Therefore, the Motion to Suppress must be denied.

### III.

In addition, Hicks seeks to exclude from trial, evidence of his 2010 state court conviction for methamphetamine production, as well as the related statements he made to Detective Widener in 2009, on the grounds that the evidence is inadmissible under Federal Rule of Evidence 404(b). He contends that evidence of his prior drug activity is irrelevant and unnecessary to prove the crime charged, and that its admission at trial would unfairly prejudice him.

"Rule 404(b) prohibits evidence of other crimes or bad acts committed by the defendant if offered 'solely to prove a defendant's bad character, but such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. McLean*, 581 F. App'x 228, 233 (4th Cir. 2014) (unpublished) (quoting *United States v. Moore,* 709 F.3d 287, 295 (4th Cir.2013)). "Rule 404(b) is a rule of inclusion, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *McLean*, 581 F. App'x at 233 (quoting *Moore,* 709 F.3d at 295).

The Fourth Circuit has outlined a four-factor test that must be satisfied before a court can properly admit prior bad acts evidence under Rule 404(b):

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. McBride,* 676 F.3d 385, 396 (4th Cir. 2012) (quoting *United States v. Johnson*, 617 F.3d 286, 296-97 (4th Cir. 2010)). The fourth factor emphasizes that all admitted Rule 404(b) evidence must satisfy the requirements of Rule 403, which allows the court to exclude relevant evidence that is unfairly prejudicial. *United States v. Williams,* 740 F.3d 308, 314 (4th Cir. 2014).

Taking the four factors in order, the first issue is the relevance of the evidence. For evidence to be relevant, it must be "sufficiently related to the charged offense." *McBride,* 676 F.3d at 397 (citation omitted). Importantly, a defendant's mere involvement with drug activity in the past "does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place or pattern of conduct." *Id.* (internal quotation marks and citation omitted). However, "[t]he more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *Id.* Further, "geographical proximity is a proper consideration in determining the relevance of Rule 404(b) evidence." *McLean*, 581 F. App'x at 235.

In this case, there are substantial similarities between Hicks' charged offenses and his prior conduct. Both involved the same drug, methamphetamine. Both used the same red phosphorous production method. Both offenses allegedly occurred under similar circumstances, in small residences where the defendant

manufactured methamphetamine with the woman he was living with.  Further, both offenses allegedly took place within a few miles of each other.  These crimes are similar enough to show that Hicks "possessed the same state of mind in the commission of both the extrinsic act and the charged offense."  *United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) (internal quotation marks and citation omitted).  In other words, evidence that Hicks "previously had the state of mind — the knowledge and intent — to distribute illegal drugs is probative and thus relevant to whether he had the knowledge and intent to commit the crime charged here."[5]  *McLean*, 581 F. App'x at 235.

It is true that the prior drug offense was not closely related in time to the current charges, as there was a five year time lapse between them.  *McBride*, 676 F.3d at 397 (stating that, where 18 months had passed since prior drug offense, "such a significant passage of time had the effect of attenuating any relevance that could be afforded to the evidence").  However, Hicks was imprisoned during part of this period, thus lessening the importance of the time discrepancy.  Moreover, time is only one factor for the court to consider, and is not "dispositive."  *Id.*; *see*

---

[5] Moreover, it is questionable whether Hicks' boast that he was the best meth maker around is properly considered Rule 404(b) evidence, but rather evidence intrinsic to the present crime.  "Evidence of uncharged conduct arising out of the same series of transactions as the charged offense, and evidence that served to complete the story of the crime on trial, do not qualify as evidence of other crimes subject to scrutiny under Rule 404(b)."  *McBride*, 676 F.3d at 396 (internal quotations marks and citation omitted).  Hicks' statement is really an admission that he knows how to make methamphetamine and may be good at it.  The statement is relevant to the current charges regardless of when it was made.

-16-

Case 1:14-cr-00028-JPJ-PMS   Document 88   Filed 07/22/15   Page 16 of 20   Pageid#: 287

*also McLean*, 581 F. App'x at 235. The other factors indicate that the alleged acts are substantially similar, and weigh in favor of a finding of relevancy.

The next factor is the necessity of the evidence. Evidence is "necessary" for Rule 404(b) purposes "when that evidence is an essential part of the crimes on trial or when that evidence furnishes part of the context of the crime." *McLean*, 581 F. App'x at 235 (internal quotation marks and citations omitted). By pleading not guilty, Hicks has "placed the elements of knowledge and intent in play." *Id.* The court must determine, however, whether the evidence is necessary in "light of other evidence available to the government." *Id.* (internal quotation marks and citations omitted). The necessity for the Rule 404(b) evidence decreases as the non-Rule 404(b) evidence that establishes the same issue increases; if the Rule 404(b) evidence is "entirely cumulative" of non-Rule 404(b) evidence, then it may not meet the necessity prong. *Id.*

In this case, Hicks has denied any involvement with the methamphetamine lab, and his primary strategy at trial would almost certainly be to place the blame on his codefendant, Amanda Tignor. Aside from Tignor's testimony, which would surely be challenged at trial on the ground that she hopes for a reduction in her prison sentence in exchange for her testimony, the government's main evidence appears to be Hicks' presence at the crime scene. Without a confession, Hicks' prior involvement with methamphetamine production provides his strongest

-17-

Case 1:14-cr-00028-JPJ-PMS   Document 88   Filed 07/22/15   Page 17 of 20   Pageid#: 288

linkage to the current charges. Thus, the evidence is necessary to refute Hicks' theory of the crime, and to establish that his presence at the crime scene was not due to ignorance, mistake, or merely his relationship with Tignor. *See Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52 (4th Cir. 1993) ("A criminal defendant . . . cannot deny knowledge of drug trafficking or an intent to traffic in drugs and at the same time preclude the admission of the government's evidence of prior occasions when he willingly trafficked in drugs."); *Mark*, 943 F.2d at 448 (finding Rule 404(b) evidence necessary to show that defendant "was not an innocent friend of his codefendants" but rather was participating in drug transactions). Therefore, I find that the evidence meets the necessity prong.

As to the third factor, I find that Hicks' prior conviction and his related statements are reliable, for all the reasons previously stated. I find that Hicks was informed of his *Miranda* rights prior to making the statements to Detective Widener in 2009, that he knowingly and voluntarily waived those rights, and that he was competent to do so. Further, despite the fact that the interview recording was subsequently deleted, there is no evidence that this was done in bad faith. In addition, Hicks has not raised any grounds to doubt the reliability of his 2010 conviction, which was based not only on Hicks' statements, but also on law enforcement officers' recovery of a fully-functioning methamphetamine laboratory

-18-

Case 1:14-cr-00028-JPJ-PMS   Document 88   Filed 07/22/15   Page 18 of 20   Pageid#: 289

at Hicks' residence.  Therefore, the evidence meets the reliability prong of the Rule 404(b) test.

Finally, I must consider whether the Rule 404(b) evidence "has the potential to cause undue prejudice, and if so, whether the danger of such undue prejudice substantially outweighs its probative value."  *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995) (internal quotation marks and citation omitted).  Of course, all prior "bad act" evidence is inherently prejudicial.  The issue is whether the prejudice is unfair, in that it brands the defendant as a "drug dealer" with evidence of unrelated crimes — the "very type of evidence that the limitation imposed by Rule 404(b) was designed to exclude."  *McBride*, 676 F.3d at 398.  I appreciate Hicks' argument that evidence of his 2009 boast to Detective Widener about being a good meth maker may be highly prejudicial to him at trial.  The fact remains, however, that Hicks' prior offense conduct is strikingly similar to the facts of this case, and thus materially probative of the elements of the offenses with which he is charged.  Further, since Hicks has denied the charges against him, the evidence provides a necessary linkage to the methamphetamine lab found in this case and tends to show he was not an innocent bystander.  Therefore, contrary to merely branding Hicks as a "drug dealer," the evidence sheds significant light on the issues in this case.  In balancing the probative value of this evidence against any risk that "the emotions of a jury will be excited to irrational behavior," *Williams*,

740 F.3d at 314 (internal quotation marks and citation omitted), I find that the evidence is not unfairly prejudicial.

In order to provide further protection against any misuse of the Rule 404(b) evidence, I will provide a jury instruction explaining the limited purposes for which the jury may consider the evidence. *See McBride*, 676 F.3d at 396. Further, as required, the government has provided prior notice to the defendant of its intention to introduce such evidence, so that the defendant may adequately prepare for it. *See id.*

IV.

For these reasons, it is **ORDERED** that the Motion to Suppress (ECF No. 39) and the Motion in Limine (ECF No. 40) are DENIED.

    ENTER: July 22, 2015

    /s/ James P. Jones
    United States District Judge